**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02259-RPM

LEONARD E. LOPEZ,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

**DEFENDANT'S TRIAL BRIEF CONCERNING PLAINTIFF'S NEGLIGENT CREDENTIALING CLAIM**

---

Plaintiff's claim for negligent privileging and credentialing claim under the Federal Tort Claims Act fails because: (1) the Court lacks subject-matter jurisdiction over this claim because Colorado law provides individual immunity against this claim; and (2) the evidence presented at trial does not establish by a preponderance of the evidence that any Department of Veterans Affairs employee acted negligently with respect to the re-credentialing and re-privileging of Dr. Glenn Kindt in 2009.

### I. Colorado Law Provides Immunity for an Individual's Conduct Relating to Privileging and Credentialing Activities.

#### A. The FTCA Mandates that State Law Apply to the United States as it Would Apply to a Private Person.

A plaintiff can only state a claim under the FTCA "under circumstances where the United States, *if a private person*, would be liable to the claimant in accordance *with the law of the place* where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphases added). This requirement is jurisdictional because it defines the scope of the United States' waiver of sovereign immunity. *Nationwide Mutual Ins. Co. v. United States*, 3 F.3d 1392, 1396 (10th Cir.

1993). "The FTCA mandates application of Colorado state law to resolve questions of substantive liability." *Gallardo v. United States*, 752 F.3d 865, 870 (10th Cir. 2014) (internal quotations omitted). Because the United States stands in the shoes of a private person under state law, the United States is also entitled to any defenses available to a private person under state law. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004) ("In light of the "similarly situated" requirement, we have previously rejected arguments similar to [Plaintiff's] and have allowed the United States the benefits of certain state-law defenses in FTCA actions, even when the United States did not meet the technical requirements of state law."); *Evert v. United States*, 535 F. App'x 703, 707 (10th Cir. 2013) (unpublished) (allowing the United States to assert recreational use defense under state law).

The Supreme Court addressed the inverse question, that of corporate liability under the FTCA, in *United States v. Olson*, 546 U.S. 43, 46 (2005). In *Olson*, the plaintiff brought an FTCA claim by drawing an analogy to the liability of a state municipal entity. Based on its interpretation of § 1346(b)(1), the Supreme Court determined that FTCA liability must be premised on an analogy to a private person, and that potential liability against an analogous municipal entity was not covered by the FTCA's waiver of sovereign immunity. *Olson*, 546 U.S. at 46; *see also Meier v. United States*, 310 F. App'x 976, 979 (9th Cir. 2009) (unpublished) (holding that because California law did not provide for individual liability for negligent hiring and retention, the VA could not be held liable under the FTCA). Other circuit courts, citing *Olson*, have held that trial courts must look to whether an individual person would be liable or have a defense under state tort law. *See In re FEMA Trailer Formaldehyde Prods Liability Litigation (Mississippi Plaintiffs)*, 668 F.3d 281, 288 (5th Cir. 2012) (no FTCA liability because state law bars tort liability for provision of emergency shelter); *Maradiaga v. United States*, 679

2

F.3d 1286, 1292-93 (11th Cir. 2012) (state law immunity for birth-related neurological injuries applied to individual federally supported physicians); *Barnes v. United States*, 448 F.3d 1065, 1067 (8th Cir. 2006) (no FTCA claim premised on "Good Samaritan" rule because the government's actions were not analogous to that of a private person).

### B. Colorado Law Provides Immunity to Individuals Who Participate in Credentialing and Privileging Activities.

Colorado courts have recognized that a negligent credentialing and privileging claim is an exception to the general bar on the corporate practice of medicine. *Villalpando v. Denver Health and Hosp. Authority*, 181 P.3d 357, 364 (Colo. Ct. App. 2007). Consequently, Plaintiff's negligent credentialing and privileging claim seeks to impose corporate, not individual liability on the United States. This type of claim is barred by the FTCA's explicit language that only liability against analogous "private person[s]" can state a claim under the FTCA. 28 U.S.C. § 1346(b)(1); *Olson*, 546 U.S. at 46; *Meier*, 310 F. App'x at 979; *see also Adams v. United States*, 420 F.3d 1049, 1053-54 (9th Cir. 2005) (corporation not a "person" within the meaning of the FTCA).

Plaintiff cannot meet the "private person" standard because Colorado law immunizes individuals from liability for activities relating to physician credentialing and privileging. In *Kauntz v. HCA-Healthone, LLC*, 174 P.3d 813 (Colo. Ct. App. 2007) the Colorado Court of Appeals held that the Colorado Professional Review Act ("CPRA") barred claims of negligent credentialing and privileging against both individuals and medical facilities. *Id.* at 817-19 ("Like its federal counterpart, the [Health Care Quality Improvement Act], the CPRA provides certain immunities to persons involved in peer review proceedings.").

In 2012, the Colorado legislature amended the CPRA to abrogate *Kauntz*'s holding with respect to negligent credentialing and privileging claims by patients against medical facilities:

3

> (2)(a) Notwithstanding subsection (1) of this section, nothing in this article relieves an authorized entity that is a health care facility licensed or certified pursuant to part 1 of article 3 of title 25, C.R.S., or certified pursuant to section 25-1.5-103, C.R.S., of liability to an injured person or wrongful death claimant for the facility's independent negligence in the credentialing or privileging process for a person licensed under article 36 of this title or licensed under article 38 of this title and granted authority as an advanced practice nurse who provided health care services for the injured or deceased person at the facility. For purposes of this section, the facility's participation in the credentialing process or the privileging process does not constitute the corporate practice of medicine.

C.R.S. § 12-36.5-203; *see also Hickman v. Catholic Health Initiatives*, 328 P.3d 266 (Colo. Ct. App. 2013) (applying provision retroactively).

The revised version of the CPRA, however, does not disturb Colorado law regarding an individual's participation in the credentialing and privileging process. *Kauntz*'s determination that credentialing and privileging is a professional review activity, as it is defined in the CPRA, remains good law. The holding in *Kauntz* that the CPRA bars claims against "any person who participates with or assists the professional review committee or governing board with respect to the professional review activities" also remains untouched by the 2012 revision to the CPRA. *See* C.R.S. §12-36.5-203(1)(d).

The FTCA does not waive sovereign immunity "unless state law recognizes a comparable liability for private persons." *Ayala v. United States*, 49 F.3d 607, 610 (10th Cir. 1995). "Accordingly, whether the United States is entitled to immunity . . . depends on whether a private person in 'like circumstances' would be entitled to claim such immunity." *Nationwide*, 3 F.3d at 1396. Because individuals have been given immunity for their participation in professional review activities under Colorado law, the Court lacks subject-matter jurisdiction over Plaintiff's negligent credentialing and privileging claim.

## II. Plaintiff Failed to Establish Facts Supporting a Breach of Duty to Support His Credentialing and Privileging Claim at Trial.

Even assuming the Court has subject-matter jurisdiction over Plaintiff's negligent credentialing and privileging claim, Plaintiff failed to establish that any VA employee breached a duty of care at trial. To show negligence, Plaintiff bears the burden of proof on his claim to establish "a legal duty to conform to a certain standard of conduct," a breach of that duty, causation, and injuries. *Settle v. Basinger*, 2013 WL 781110, \*8 (Colo. Ct. App. 2013) (unpublished). Under Colorado law, a medical facility may only be held independently liable for its credentialing and privileging decisions if "it knows or should know of a propensity on the doctor's part to commit negligent acts." *Braden v. Saint Francis Hosp.*, 714 P.2d 505, 507 (Colo. Ct. App. 1985); *Camacho v. Mennonite Bd. of Missions*, 703 P.2d 598, 600 (Colo. Ct. App. 1985).

At trial, Plaintiff established the following facts:

(1) Dr. Glenn Kindt was 79 years old at the time he was re-credentialed in 2009;

(2) Two surgeries performed by Dr. Kindt were the subject of root cause analyses ("RCA") prior to his re-credentialing in 2009, and these RCAs contributed to Dr. Kindt's voluntary reduction in privileges;

(3) The Denver VA did not utilize aggregate data in its re-credentialing and re-privileging process in 2009;

(4) Peer references for re-credentialing and re-privileging may be subject to some bias because physicians do not want to speak poorly of their colleagues;

(5) Dr. Thomas Whitehill, one of the VA employees responsible for credentialing and privileging at the VA, was aware of all of these facts.

None of these facts, either standing alone or viewed as a whole, establish that Dr. Kindt had a "propensity" to commit negligent acts. In particular, a root cause analysis is a mechanism for hospitals to identify potential areas of concern and to conduct further quality improvement activities. Two RCAs in a relatively short period of time may signal that a provider warrants additional scrutiny. They do not, however, establish or warrant an inference that a physician has actually acted negligently, or that he has a "propensity" to commit negligent acts.

And the evidence presented at trial demonstrated that Dr. Whitehill acted appropriately and subjected Dr. Kindt to additional scrutiny before recommending him for re-credentialing and re-privileging in 2009. In response to the two RCAs, Dr. Whitehill testified that he:

(1) Analyzed 10 additional cases related to Dr. Kindt's RCAs as part of a Focused Professional Practice Evaluation ("FPPE") to check for additional concerns, and he found none;

(2) Evaluated the 10 cases analyzed as part of Dr. Kindt's Ongoing Professional Practice Evaluations ("OPPE"), and found no problems or issues;

(3) Spoke at length to Dr. Kindt's neurosurgery peers, including Dr. Kerry Brega and Dr. Kevin Lillehei about Dr. Kindt's competence. Dr. Lillehei was responsible for credentialing and privileging of physicians at the University of Colorado hospital, so Dr. Whitehill gave his opinion additional weight. None of these physicians expressed concern about Dr. Kindt's competence to perform surgery.

Furthermore, at that time, Dr. Kindt agreed to voluntarily relinquish privileges for cranial surgery. He was re-privileged to perform spinal surgeries only. Dr. Whitehill testified that after taking into account the information described above, his professional judgment was that Dr. Kindt was competent to carry out the operating privileges he requested in 2009. Dr. Whitehill

then presented Dr. Kindt's entire file, including the RCAs, FPPE, and OPPE information to the VA's Professional Standards Board, where Dr. Kindt's quality of care was discussed. The Board recommended that Dr. Kindt be re-credentialed and re-privileged for spinal surgery, but no evidence was presented about the Board's knowledge or lack thereof of Dr. Kindt's surgical skills and abilities.

No evidence was presented at trial that Dr. Whitehill knew or should have known about any tort claims against Dr. Kindt at the time of his re-credentialing in 2009. No evidence was presented that Dr. Whitehill should have known of any actual, or even alleged negligence on the part of Dr. Kindt at the time of his re-credentialing in 2009. No evidence was presented at trial that Dr. Whitehill knew or should have known about any cognitive or physical problems Dr. Kindt may have been experiencing in 2008 or 2009.

Plaintiff's credentialing and privileging expert, Dr. Shershow, did not testify about any information or evidence that he believed Dr. Whitehill should have known that would have affected his decision to recommend Dr. Kindt for re-credentialing and re-privileging. Dr. Shershow's testimony that the use of aggregate data was part of the standard of care is insufficient to establish that the VA knew or should have known that Dr. Kindt had a propensity to commit negligent acts. To establish such a proposition, Plaintiff must show that the use of aggregate data would have revealed that Dr. Kindt had a pattern of negligence or recklessness in performing surgery that was likely to continue in the future. No evidence was presented as to these issues. In short, Plaintiff failed to carry his burden of proof to show that Dr. Whitehill knew or should have known that Dr. Kindt had a propensity to commit negligent acts, and that this propensity should have led him to deny Dr. Kindt, a successful surgeon for more than 30 years, credentials and privileges at the VA in 2009.

### III. Plaintiff Cannot Establish a Claim for Negligent Credentialing and Privileging in the Absence of Damages Resulting From Medical Negligence.

In order for Plaintiff to recover damages on his tort claim for negligent re-credentialing, he must establish that his chronic pain syndrome was the result of medical negligence rather than being a recognized complication of spine surgery. As with any other negligence claim, Plaintiff must prove that Defendant's conduct caused him to suffer compensable damages. *See, e.g., Day v. Johnson*, 255 P.3d 1065, 1069 (Colo. 2011) (to prove a medical negligence claim "[l]ike other negligence actions, the plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and that the defendant's breach caused the plaintiff's injury."). While it is not disputed that Plaintiff suffers from a serious neurologic disorder, the injury is only compensable if it was caused by medical negligence that occurred during his March 5, 2010, surgery. Plaintiff is required to prove that his injury was proximately caused by medical negligence, recovery under his re-credentialing claim would undo the fundamental principles of tort law that serve to base compensation on a showing of proximate cause. *See Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 459 (Colo. App. 2003) ("In contrast, tort damage analysis focuses on the concept of proximate cause and allows recovery of damages that were the particular consequence of the tort."); *Perreira v. State*, 768 P.2d 1198, 1221-22 (Colo. 1989) ("Traditional tort analysis requires the existence of a duty, breach of duty, a showing that this breach was the proximate cause of the plaintiff's injuries, and damage.").

Because Plaintiff failed to establish a claim of medical negligence, his claim for negligent re-credentialing necessarily fails as well.

### IV. Conclusion

Based on the foregoing, Plaintiff's claim for negligent credentialing and privileging should be dismissed.

Respectfully submitted this 27th day of January, 2015

        JOHN F. WALSH
        UNITED STATES ATTORNEY

        *s/ Mark S. Pestal*
        Mark S. Pestal
        Zeyen J. Wu
        Assistant United States Attorneys
        1225 Seventeenth Street, Suite 700
        Denver, Colorado  80202
        (303) 454-0100

        Attorneys for the United States

**Certificate of Service**

This certifies that the foregoing was served via the Court's Electronic Case Filing system on January 27, 2015, which will serve a copy electronically upon the following counsel:

dlacrue@leventhal-law.com
jim@leventhal-law.com
brownn@fdzara.com

s/ *Mark S. Pestal*
U.S. Attorney's Office