IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02259-RPM

LEONARD E. LOPEZ,

          Plaintiff,

vs.

UNITED STATES OF AMERICA,

          Defendant.

---

**PLAINTIFF'S TRIAL BRIEF IN RESPONSE TO THE COURT'S JANUARY 12TH MINUTE ORDER [Doc. No. 71]**

---

## I.    INTRODUCTION

In its January 12, 2015 Minute Order, this Court ordered Plaintiff Leonard Lopez ("Mr. Lopez") to file a trial brief addressing the issues of state and federal statutory limitations on damages and whether Mr. Lopez has suffered a motor injury. In response to the Court's Order, Plaintiff submits this trial brief on the following issues:

- Issue 1: Whether good cause exists to exceed the soft cap of $1 million of damages imposed by Colo. Rev. Stat. § 13-64-302(1)(b) because of the extent and nature of Mr. Lopez's damages.

- Issue 2: Whether Colo. Rev. Stat. § 13-64-302(1)(b) imposes a $300,000 cap on noneconomic damages to be assessed post-verdict.[1]

---

[1] Plaintiff requests the Court make findings concerning Mr. Lopez's noneconomic damages irrespective of the cap. Plaintiff reserves the right to file a constitutional challenge to the statutory cap should the noneconomic damages total exceed $300,000.

1

- Issue 3: Whether there is any federal cap on damages that impacts this case, where Plaintiff is not requesting damages beyond the $10 million sum certain requested in his Amended Form 95.

- Issue 4: Whether the Court may consider the effect of Dr. Kindt's settlement, whereas here Defendant did not raise any affirmative defense of pro-rata liability or setoff, or designate any nonparty at fault pursuant to Colo. Rev. Stat. § 13-21-111.5(3).

- Issue 5: Whether Plaintiff may receive a lump-sum payment of future damages, as allowable under Colo. Rev. Stat. § 13-64-205(1)(f), should the Court find in favor of Mr. Lopez.[2]

- Issue 6: Whether the Court should find, based on expert witness testimony and the Plaintiff's physical demonstration during trial, that Mr. Lopez suffered a motor nerve injury.

This brief addresses these issues in turn below.

## II. LIMITATIONS ON DAMAGES

### A. This Court Has Wide Discretion to Exceed the Colorado Cap on Past and Future Damages

Colo. Rev. Stat. § 13-64-302(1)(b), imposes a $1 million "soft" cap on past and future damages that may be recovered in a medical malpractice action. Prejudgment interest "that accrues during the time period beginning on the date the action accrued and ending on the date of filing of the civil action is deemed to be a part of the damages awarded" and is included within the $1,000,000 limit on total damages. Colo. Rev. Stat. § 13-64-302(2); *Ochoa v. Vered*, 212 P.3d 963, 970 (Colo. App. 2009). However, this limitation on damages under Colorado law only applies to

---

[2] Plaintiff reserves the right to request a lump-sum payment of future damages according to the requirements imposed by Colo. Rev. Stat. § 13-64-205(1)(f).

2

pre-filing, and not post-filing, prejudgment interest. Post-filing pre-judgment interest is not limited by any cap on damages. *See Wallbank v. Rothenberg,* 74 P.3d 413, 420 (Colo. App. 2003). Nevertheless, Plaintiff acknowledges there is no interest prior to judgment in an FTCA case such as this. *28 U.S.C.S. § 2674.*

Colo. Rev. Stat. § 13-64-302(1)(b) includes an exception to the $1 million if, upon good cause shown, the Court determines that the application of the $1 million cap for recovery of the present value of past and future economic damages would be unfair. The terms "good cause" and "unfair[ness]" are not defined in Colo. Rev. Stat. § 13-64-302(1)(b). However, Colorado case law establishes that the term "good cause" only requires a "legally sufficient reason." *Wallbank v. Rothenberg,* 140 P.3d 177 (Colo. App. 2006).

Furthermore, Colorado case law interprets the term "unfair" as used in this statute to simply mean "marked by injustice." *Id.* Indeed, "good cause" and a showing that the application of the cap is "unfair" is not a high standard. The determination of whether the statutory exception to the damages cap applies necessarily involves factual determinations. *Wallbank,* 140 P.3d at 179. Thus, the evidence offered in the present case must show that the damages for past medical and other health care expenses, future medical, health care and life care plan expenses, past loss earnings (and lost earning capacity), and future lost earnings have a sufficient legal justification, and that limiting the plaintiff to $1 million would create an injustice.

The trial court has a wide latitude of discretion in its determination of whether there is good cause and unfairness. *Id.* Colorado case law unequivocally establishes that a trial court "may exercise its discretion to consider factors it deems relevant when determining whether a movant qualifies for the . . . exception to the cap." *Id.* at 180-81. "The trial court may not make that determination in a vacuum, but must necessarily consider the circumstances in each case." *Id.* at

181. Again, neither the statute nor the Colorado case law specifies factors a trial court must consider when determining whether the cap should be exceeded. *Id.* The trial court need only make specific findings about "good cause" and "unfair[ness]." *Id.* at 179.

### B. The Nature and Extent of Mr. Lopez's Injuries Demonstrates the Cap Should be Exceeded

Plaintiff presented compelling evidence of the nature and extent of Mr. Lopez's injuries and the impact such injuries have had and will continue to have in both the noneconomic and economic aspects of Mr. Lopez's life. This evidence included the testimony of Mr. Lopez himself, and that of his wife Eva Lopez, his co-worker Scott Maldonado, his treating physician Giancarlo Barolat, his life care planner Helen Woodard, and his expert economist Mark McNulty, Ph.D. In the face of this overwhelming and largely unrebutted evidence concerning the severity and permanence of Mr. Lopez's injuries, it would be manifestly unfair to apply the $1 million dollar cap. As a result of the Defendant's negligence, Mr. Lopez suffered a severe and permanent nerve injury resulting in neuropathic pain with symptoms consistent with Complex Regional Pain Syndrome ("CRPS") in his left foot. Mr. Lopez has incurred significant medical, health care, and life care expenditures, and will require extensive medical, health care, and life care expenditures in the future.

Defendant caused injuries that are permanent and so severe that they have altered the entire course of Mr. Lopez's life. Subsequent to the discectomy surgery, not a day has passed without Mr. Lopez experiencing major difficulties and expenses related to his injuries, physical impairment, and disability, which have greatly diminished his functioning and independence. Basic tasks and activities of daily living are more difficult and expensive for Mr. Lopez. Accordingly, due to the nature and extent of Mr. Lopez's injuries, the cap should be exceeded in this case.

### a. Mr. Lopez has already sustained significant past damages.

It is undisputed that Mr. Lopez has already incurred $165,118.34 in medical bills as a result of his permanent nerve injury. *See Plaintiff's Trial Exhibit* 3, attached as **Exhibit 1** hereto. In addition, Mr. Lopez has lost $29,800 in past earnings and $5,400 in home services. Accordingly, his past damages alone total $200,318.34.

### b. Mr. Lopez's future damages alone exceed the $1 million cap.

The evidence presented at trial demonstrates that Mr. Lopez will suffer future damages in excess of the $1 million cap. Under Colorado law, a trial court has wide discretion to consider factors it deems relevant. *Wallbank*, 140 P.3d at 179. In the *Wallbank* case, the Colorado Court of Appeals found that the trial court could properly consider factors such as: whether the plaintiff has a record of substantial earnings; whether the plaintiff identified particular needs or losses that would not be compensated by damages already awarded; the basis for determining the extent of the financial impact of future earnings; whether the testimony concerning future earnings is overly speculative; and whether the plaintiff will be adequately compensated by the other damages. *Id.* at 178. As explained above, there are no enumerated factors in the statute or case law that this Court must consider.

Here, testimony from Mr. Lopez's treating physician, Dr. Barolat, as well as various experts, including Ms. Woodard and Dr. McNulty, established that Mr. Lopez will incur future expenses including, among other things, surgeries, medications and supplies, personal care services, and case management services. Further, Plaintiff's experts demonstrated that Mr. Lopez will experience future lost earnings as a result of premature retirement.

### i. Mr. Lopez's future health care and life care expenses

Ample evidence of the estimated cost of Mr. Lopez's future medical and life care expenses was presented at trial. After reviewing all of Mr. Lopez's medical and employment records, meeting with Mr. Lopez's treating physician Dr. Barolat, and conducting market research, Helen Woodard authored a life care plan encompassing Mr. Lopez's future health and life care needs. *See* Tr., *December 15, 2014*, at 88:22 – 89:14, attached as **Exhibit 2**. The expenses listed in Ms. Woodard's life care plan include future doctor's visits, maintenance of Mr. Lopez's stimulator implant, surgery for the replacement of his implantable pulse generator, laboratory tests, prescription and over-the-counter medications, assistance with his daily needs, case management services, and homecare costs. *See* Ms. Woodard's life care plan, attached as **Exhibit 3**. These expenses are necessary to compensate Mr. Lopez for the real monetary costs and expenses he will encounter as a result of obtaining such services and supports.

In addition, Ms. Woodard testified that at the time she made the life care plan, she premised her calculations upon the fact that most of the ongoing and future assistance and case management Mr. Lopez requires will be provided by his wife, who was just recently diagnosed with cancer. *See* Tr., *December 15, 2014*, at 98:5-21, attached as **Exhibit 2**. Ms. Woodard testified that if Mrs. Lopez is unable to provide the services that she had been providing to Mr. Lopez, the costs for his assistance will be at least four or five times what she listed in her report. *See id.* at 100:22 – 101:8. Given that Mr. Lopez has to take prescription pain medications daily, the expenses for his assistance must also include the cost of transportation as he can no longer safely drive a car. *See Testimony of Eva Lopez*, Tr., *December 15, 2014*, at 136:22 – 137:15; *see also Testimony of Scott Maldonado*, Tr., *December 15, 2014*, at 149:6-15, attached as **Exhibit 2**.

### ii. Mr. Lopez's future lost earnings

The evidence presented at trial demonstrates Mr. Lopez will suffer future lost earnings of at least $390,600. Mr. Lopez has worked since he was 13-years-old. He was employed at the Pueblo Chemical Depot for over 20 years, receiving promotions and accolades for his job performance. As a result of the devastating effect of his injury, including his unremitting pain, difficulty walking, and inability to stay focused and alert because of pain medication, Mr. Lopez had to quit working five years before he planned on retiring. Consequently, Mr. Lopez was unable to earn his salary, overtime, and bonuses for those years.

The analysis Dr. McNulty used to determine Mr. Lopez's future earnings loss is by no means speculative, but instead, is an accurate and reliable prediction of his lost future earnings and income. The loss of earnings analysis is based upon hard data and is rooted in well-accepted methodology in the field of labor-economics. Beyond defense counsel's disagreement regarding Dr. McNulty's decision to include Mr. Lopez's post-injury overtime in his analysis, Dr. McNulty's opinions were unrebutted by the Defendant.

To cap the damages at $1 million under the circumstances outlined above would be manifestly unfair. This case presents a situation where the negligence of the Defendant has injured Mr. Lopez in such a manner that it has affected his entire life, from the time of the injury until his death. Accordingly, the nature and extent of Mr. Lopez's injuries and losses demonstrate good cause to exceed the cap.

### C. Colorado Law Imposes a Rigid, Unfair and Arbitrary Cap on Noneconomic Damages in Medical Malpractice Cases

Colo. Rev. Stat. § 13-64-302(1)(b), which applies to medical malpractice actions, originally imposed a $250,000 cap on noneconomic loss or injury. Effective July 1, 2003, the

7

damages limitation increased to $300,000. *See* Colo. Rev. Stat. § 13-64-302(1)(c). However, when this increase occurred, the legislature also changed the limitation on damages to roll damages for physical impairment and disfigurement into the non-economic loss category under the $300,000 cap. Before 2003, damages for impairment and disfigurement in medical negligence cases were subject only to the $1 million limitation. In addition, the limitation on damages under the Health Care Availability Act is not adjusted for inflation and will remain at $300,000 unless and until the legislature amends the statute.

The $300,000 cap broadly defines "noneconomic damages" and encompasses loss for "pain and suffering, inconvenience, emotional stress, physical impairment or disfigurement, and impairment of the quality of life." Colo. Rev. Stat. § 13-64-302(1)(a)(11)(A). The noneconomic damages limitation applies on a per claim basis and not a per defendant basis. Thus, even if more than one defendant may be held liable for medical malpractice damages, the total amount of noneconomic damages recoverable by the injured patient may not exceed $300,000. *See Colorado Permanente Medical Group, P.C. v. Evans*, 926 P.2d 1218 (Colo. 1996).

While plaintiffs in medical malpractice cases, who often suffer the most serious and extensive injuries, are limited to the $300,000 cap imposed under Colo. Rev. Stat. § 13-64-302, plaintiffs in all other civil cases can recover up to $468,010 in noneconomic damages as of January 1, 2008. *See* Colo. Rev. Stat. § 13-21-102.5(3)(c)(1); *Nelson v. United States*, No. 11-CV-02953-WYD-MEH, 2014 WL 1929585, at *14 (D. Colo. May 14, 2014). Unlike the noneconomic damages cap in medical malpractice cases, the damages set forth in Colo. Rev. Stat. § 13-21-102.5 have been adjusted for inflation. Further, this statute does not limit a plaintiff's recovery of compensatory damages for physical impairment or disfigurement. Colo. Rev. Stat. § 13-21-102.5(5). The cap on noneconomic damages for non-medical malpractice cases also allows for

greater flexibility by giving a court discretion to exceed the cap if it finds justification to do so by clear and convincing evidence. Colo. Rev. Stat. § 13-21-102.5(3)(a); *Nelson*, 2014 WL 1929585, at *14.

Colo. Rev. Stat. § 13-64-302 imposes unfair and illogical burdens on persons who are injured as a result of medical malpractice. Medical malpractice claimants do not receive the same rights to compensation as plaintiffs in any other civil action because of arbitrarily diminished compensation for legally cognizable claims. Given the arbitrariness of the medical malpractice statutory cap and its tentative relationship to the statute's purported purpose to address the alleged insurance crisis, the statute arguably violates the Equal Protection Clause. *See, e.g., Estate of McCall v. United States*, 134 So. 3d 894, 901 (Fla. 2014) (holding that the Florida cap on wrongful death noneconomic damages in medical malpractice claims violated the Equal Protection Clause of the Florida Constitution). As previously indicated, Plaintiff seeks to reserve the right to challenge the $300,000 cap depending on this Court's findings. *See supra* n. 1.

### D. Mr. Lopez's Daily Struggle with Severe Pain Warrants a Finding of Significant Noneconomic Damages

The evidence presented at trial demonstrates that Mr. Lopez has suffered and will continue to suffer significant noneconomic damages. Although narcotics and the nerve stimulator provide some level of relief, the pain still plagues him daily. Dr. Barolat testified about the body's ability to adapt to the nerve stimulation treatment, which can lead to a return of symptoms over time. There is no guarantee that the relief Mr. Lopez currently receives from the nerve stimulator will continue throughout his life. Even with the current treatment, Mr. Lopez still hurts: he removes his shoe whenever possible and his abnormal gait has led to pain in the opposite hip.

Further, the chronic pain is emotionally devastating to Mr. Lopez. He feels as though he no longer has a life now that he experiences agonizing pain. The nerve damage has been

detrimental to his personal relationships, particularly those with his wife and daughter. The Court had a chance to witness this devastation firsthand when Mr. Lopez was overcome with emotion while testifying about the realization he could no longer work because of the pain.

Mr. Lopez's noneconomic loss, in the form of unrelenting, daily pain, serves as a perfect example of how the $300,000 cap on noneconomic injuries arbitrarily and unfairly burdens plaintiffs in medical malpractice cases. Accordingly, plaintiff respectfully requests that this Court indicate the amount of noneconomic damages it would award irrespective of the cap in an effort to fully compensate Mr. Lopez.

### E. There are No Federal Limitations on Damages in this Case

Section 2675(b) of Title 28 of the United States Code provides that suit under the FTCA shall not be

> . . . instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

Federal case law construing § 2675(b) establishes that it only caps the aggregate amount of damages awarded in the judgment that is ultimately rendered. *See Reilly v. United States*, 863 F.2d 149, 173 n.19 (1st Cir. 1988) ("plaintiffs are entitled to receive whatever recoverable damages they can prove, up to the limit of the overall claim. In this case, the administrative *ad damnum* is a unitary roof which covers the entirety of the damages; there is neither reason nor warrant to fragment it into a series of separate subceilings, according some artificial proportionality to each and consequently, giving each limitative effect."); *Lebron v. United States*, 279 F.3d 321, 329 n.9

(5th Cir. 2002) ("Section 2675(b) merely caps Karina's aggregate damages award. If the award has been reduced below the cap for other reasons, § 2675(b) does not require reducing an award any further."). *See also, Benjamin v. United States*, 85 F.Supp.2d 1034, 1037 (D. Colo. 2000) (holding that the plaintiff could present any evidence to prove the amount of his actual damages, but noting that his recovery would be limited to the amount set forth in his administrative claim); Jayson & Longstreth, Handling Federal Tort Claims, § 10.0497][a] ("the restrictive language of the statute does not prevent proof of damages in excess of the amount of the administrative claim but only prevents assertion of a claim and the rendering of a judgment against the Government in excess of that amount.").

No federal statutes imposing limitations on damages apply to this case. Here, the limitation indicated by § 2675(b) is inconsequential. While a claimant in an FTCA action is generally limited to the amount indicated on Form 95, *see* 28 U.S.C. § 2675, Plaintiff does not seek to exceed the aggregate amount of ten million dollars listed in this case. *See* Plaintiff's Form 95, attached as **Exhibit 4**.

### F. This Court Should Not Consider the Effect of Dr. Kindt's Settlement in its Award of Damages Because the Defendant Waived the Affirmative Defense of Pro-Rata Liability

Colorado law permits the fact finder to consider the negligence or fault of a nonparty only if specific requirements set forth in Colo. Rev. Stat. § 13-21-111.5(3)(b) are met. *See Chavez v. Parkview Episcopal Med. Ctr.*, 32 P.3d 609, 611 (Colo. App. 2001). "[A] court may not allow the finder of fact to consider the negligence or fault of a nonparty unless such issue has been properly raised by the defendant in a pleading which complies with the requirements of § 13-21-111.5(3), C.R.S." *Thompson v. Colo. & E. R.R. Co.*, 852 P.2d 1328, 1330 (Colo. App. 1993); *see also Montoya v. Grease Monkey*, 883 P.2d 486, 489 (Colo. App. 1994). "The notice shall be given by

filing a pleading in the action designating such nonparty and setting forth such nonparty's name and last-known address, or the best identification of such nonparty which is possible under the circumstances, together with a brief statement of the basis for believing such nonparty to be at fault." Colo. Rev. Stat. § 13-21-111.5(3)(b).

The Tenth Circuit has summarized Colorado law on the prerequisites for apportioning the negligence or fault of a designated nonparty pursuant to Colo. Rev. Stat. § 13-21-111.5 as follows:

> In *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 80-81 (Colo. 2001) and *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 535-40 (Colo. 1997), the Colorado Supreme Court set forth the relevant requirements of the Colorado apportionment statute, Colo. Rev. Stat. § 13-21-111.5. First, a party *must sufficiently designate the nonparty by making "a brief statement of the basis for believing such nonparty to be at fault."* Redden, 38 P.3d at 80 (quoting Colo. Rev. Stat. § 13-21-111.5(3)(b)). *To satisfy this requirement, the party must "allege the basis for believing the nonparty is legally liable to the extent the non-party's acts or omissions would satisfy all the elements of a [ ] claim."* Id. at 81. Courts should "construe designation requirements strictly to avoid a defendant attributing liability to a non-party from whom the plaintiff cannot recover." *Id.* at 80. Second, the defendant seeking the allocation of fault must present sufficient evidence at trial to support a finding on each of the essential elements of the claimed basis for a finding of fault. *See Barton*, 938 P.2d at 536-37.

*Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1278 (10th Cir. 2005) (emphasis added), *overruled on other grounds*, *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821 (Colo. 2008).

Once a plaintiff enters into a settlement agreement with one or more defendants, the remaining defendants are required to invoke the provisions of Colo. Rev. Stat. § 13-21-111.5(3), "alerting the court that the proportionate fault of these individuals [will] be an issue when the judgment [is] rendered." *Montoya, supra*, 883 P.2d at 489. "The effect of settlement with nonparties on the remaining trial is a setoff that must be pled as an affirmative defense or is waived." *Ochoa v. Vered*, 212 P.3d 963, 972 (Colo. App. 2008). Absent a proper invocation of

Colo. Rev. Stat. § 13-21-111.5(3), the defendant does not have rights under the statute and the issue of pro-rata liability is not properly before the finder of fact. *Montoya*, 883 P.2d at 489-90.

Here, the Defendant never raised the affirmative defense of a nonparty at fault under Colo. Rev. Stat. § 13-21-111.5 in its Answer or otherwise. Defendant has waived and forfeited any right it may have had to receive a setoff for Dr. Kindt's settlement. Accordingly, any apportionment of liability by the Court when entering a final judgment would be improper.

### G. Plaintiff Reserves his Right to Elect a Lump-Sum Payment of Any Future Damages Awarded

Under the FTCA, the government is to be treated "in the same manner and to the same extent as a private individual under like circumstances" depending on the law of the state where the tort occurred. 28 U.S.C. § 2674 (1988); *Hill v. United States*, 81 F.3d 118. 120 (10th Cir. 2006). The FTCA requires the law of the place "where the act or omission occurred" to be applied. 28 U.S.C. § 1364(b)(1).

Under Colorado law, in actions such as this in which a plaintiff claims future economic damages in excess of $150,000, periodic payments are mandatory unless the plaintiff exercises his or her right to receive payment in a lump-sum, by making a proper election pursuant to state law. Colo. Rev. Stat. § 13-64-205(1)(f), explicitly provides:

> The plaintiff who meets the criteria set forth in this subsection (1) may elect to receive the immediate payment to the plaintiff of the present value of the future damage award in a lump-sum amount in lieu of periodic payments. In order to exercise this right, the plaintiff must either:
>
> (I)(A) Have reached his or her eighteenth birthday by the time the periodic payment order is entered;
> (B)  Not be an incapacitated person, as defined in section 15-14-102(5), C.R.S.; and
> (C)  Have been provided financial counseling and must be making an informed decision.

The statutory right of election is unilateral and, once it has been exercised, mandatory. The Colorado Supreme Court in *HealthONE v. Rodriguez ex rel.*, 50 P.3d 879, 895 (Colo. 2002), construed an earlier version of Colo. Rev. Stat. § 13-64-205, stating: "If the plaintiff elects to receive lump-sum payment in lieu of periodic payments, the court must enter judgment for the present value of future damages." Accordingly, under Colorado law, a judgment awarding future damages payable in a lump-sum is a matter of right upon a proper election by an eligible plaintiff pursuant to subparagraph (I) of Colo. Rev. Stat. § 13-64-205(1)(f). As stated before, Mr. Lopez reserves the right to elect a lump-sum payment of the present value of all of his future damages should the Court enter judgment in favor of the Plaintiff. *See supra*, n. 2.

### III. MR. LOPEZ'S MOTOR INJURY

The evidence presented during trial demonstrated that Mr. Lopez experiences partial foot drop, a manifestation of motor nerve injury. Primarily, Dr. Arle, Dr. Waller, and Dr. Poffenbarger all agree that foot drop is evidence of an injury to motor component of the L5 nerve root. *Testimony of Dr. Poffenbarger*, Tr., *December 16, 2014*, at 336:25-337:5; *Testimony of Dr. Waller*, Tr., *December 17, 2014*, at 465:7-12; *Testimony of Dr. Arle*, Tr., *December 18, 2014*, at 627:4-12, attached as **Exhibit 2**.

Defense expert Dr. Arle conceded that Mr. Lopez has CRPS as a result of a nerve injury. *Testimony of Dr. Arle*, Tr., *December 18, 2014*, at 606:9-609:10. However, Dr. Arle refused to accept motor damage as an explanation for Mr. Lopez's symptoms, instead indicating extensor hallucis longus ("EHL") muscle weakness as justification. This is a distinction without a difference:

> Q. And would [foot drop] manifest itself, for instance, if Mr. Lopez were unable to fully bring his foot up?
> A. Without pain?

> Q Let's just start with if he was unable to fully bring his foot up. Is that evidence of a foot drop? Not necessarily that there is one, because you have to consider the pain, but is that evidence of a foot drop?
> A. It would suggest there might be some weakness in that muscle, the EHL.

*Id.* at 627:13-21.

This symptom, even if manifested by weakness in the EHL, is consistent with a motor injury. Furthermore, Dr. Arle acknowledged that a physical examination to evaluate for motor loss has not been done because of the severe pain Mr. Lopez experiences:

> Q On the issue of whether Mr. Lopez has a neurologic
> deficit as a result of this surgery, it's your opinion that
> no one has been able to do a full physical or motor
> examination because of his pain. To your knowledge.
> A Is that a question?
> Q Is that true?
> A Yes. I think it's very difficult, in my experience, and
> I got that out of the information I was given from different
> practitioners who have tried to examine him. This is very
> difficult in pain patients. You can't even touch the area.
> Asking them to remove their shoe or sock is difficult, and
> doing a sensory exam is particularly difficult, and certainly
> a motor exam. So it doesn't surprise me 1 that I have--that
> there's limited information on his real--real exam, his real
> capabilities.

*Id.* at 626:14-627:3.

Dr. Poffenbarger challenged the conclusion about a motor nerve injury throughout his testimony. He explained the lack of medical reliability in the operative note from Mr. Lopez's discectomy, which states "[t]here was no motion or movement which would suggest any motor root involved." *See* **Exhibit 5**. Dr. Poffenbarger clarified that lack of patient movement, when a nerve is damaged during surgery, is neither sensitive nor specific enough data to conclude there was no motor involvement in the nerve:

> Q. So the fact that according to whoever wrote--well, the fact that Dr. Kindt wrote
> in this note, "No motion or movement" which would suggest any motor root

15

involved, does that rule out the fact that this nerve that was removed had motor--or created motor function for Mr. Lopez?
A. It's neither sensitive nor specific enough data to draw a valid conclusion from intraoperatively. It certainly is helpful to make sure that you don't see the leg twitch when you push on it, but it's not reassuring enough to decide to amputate the root.

*Testimony of Dr. Poffenbarger*, Tr., *December 16, 2014*, at 280:17-281:1, attached as **Exhibit 2**. In cases where surgeons are required to resect nerve roots, they use a stimulation instrument along with sophisticated electrical monitoring to determine motor versus sensory function. *Id.* at 278:4-9. Further, Dr. Poffenbarger explained that even in partial nerve injury, the damage impacts motor, sensory, and proprioception function:

> THE COURT: So you could damage one or two or multiple fibers without severing the nerve root?
> THE WITNESS: That is correct, sir. And that's well-described in literature; a partial nerve root amputation is the term that's used where part of it is bit. There's a partial injury. Interestingly, you tend to get all elements, motor, sensory, proprioception, so on, probably because of the pulling part that occurs when the nerve is bit. But yes a partial nerve root amputation and then injury patterns.

*Id.* at 321:5-13.

All but one of Mr. Lopez's post-discectomy evaluations indicate both motor and sensory deficits in his left foot and leg. *Id.* at 379:17-25, attached as **Exhibit 2**. The multiple data points, from the recovery room after the operation to many years down the road, makes the single discharge note by resident Dr. Newman an outlier, as it makes no mention of the motor and sensory problems Mr. Lopez experiences. *Id.* at 339:15-20.

Furthermore, the Court had an opportunity to witness Mr. Lopez's physical impairment firsthand during his direct examination. When asked to pull his feet upward as far as possible, Mr. Lopez's left foot was unable to flex to the same extent as the right. *See Testimony of Leonard Lopez*, Tr., *December 15, 2014*, at 182:20-23, attached as **Exhibit 2**. Mr. Lopez testified that the deficit on the left side—the partial foot drop—existed since his discectomy procedure. *Id.* at 182:24-25, attached as **Exhibit 2**.

It is undisputed that Mr. Lopez suffers from severe pain in his left foot. This pain precludes a formal, detailed, muscle-by-muscle exam. *Id.* at 301:17-22, attached as **Exhibit 2**. However, this is characteristic of nerve root injury. *Id.* The motor evaluations show a deficit to the extent which it can be performed with the pain. Mr. Lopez himself testified that the motor deficit that was not present before surgery. Even the manner in which the nerve roots exists within the body makes it expected that any damage to the structure impacts both motor and sensory function.

## IV.   CONCLUSION

Plaintiff respectfully submits that the evidence presented at trial fulfills the good cause requirement to surpass the $1 million cap on damages and requests this Court exercise its discretion to exceed the statutory cap. It would be unfair and unjust for Mr. Lopez, given his extensive damages demonstrated over the course of trial, not to receive compensation over the state statutory cap. Colorado statute imposes a $300,000 limit on noneconomic damages, although Plaintiff reserves the right to challenge the constitutional validity of the provision if the Court enters an award above this figure. Plaintiff's prior settlement with Dr. Kindt related to Mr. Lopez's discectomy procedure should not be offset from the award given Defendant's waiver of the pro-rata liability affirmative defense. Plaintiff reserves the right to request a lump-sum payment of future damages should the Court find in favor of Mr. Lopez. Further, Plaintiff submits that the evidence is sufficient to support a finding that Mr. Lopez's nerve damage includes a loss of motor function.

Respectfully submitted this 27th day of January, 2015.

                        LEVENTHAL, BROWN & PUGA, P.C.

                        *s/DezaRae LaCrue*
                        James M. Leventhal
                        DezaRae LaCrue
                        LEVENTHAL & PUGA, P.C.
                        950 S. Cherry Street, Suite 600
                        Denver, CO 80246
                        Telephone: (303) 759-9945
                        Facsimile: (303) 759-9692
                        *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of January, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Mark S. Pestal, Esq. | mark.pestal@usdoj.gov |
| Natalie Brown, Esq. | brownn@fdazar.com |

*s/ DezaRae LaCrue*