IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02259-RPM

LEONARD E. LOPEZ,

                                                                                                    Plaintiff,

vs.

UNITED STATES OF AMERICA,

                                                                                              Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S TRIAL BRIEF CONCERNING PLAINTIFF'S NEGLIGENT CREDENTIALING CLAIM**

**INTRODUCTION**

Plaintiff hereby submits the following Response to Defendant USA's Trial Brief Concerning Plaintiff's Negligent Credentialing Claim as ordered by the Court in its Order dated January 12, 2015. [Doc. 71].

As the Court is aware, it is the Plaintiff's position that the negligent surgery was performed by Samuel Waller, M.D. ("Dr. Waller"). There is substantial persuasive evidence that Dr. Waller was the surgeon who actually removed the nerve from Mr. Lopez's back. Plaintiff further contends that Glenn Kindt, M.D. ("Dr. Kindt"), the surgeon supervising Dr. Waller's discectomy procedure, was improperly credentialed. If the Court makes a determination that Dr. Kindt actually removed this nerve, then Defendant USA remains completely responsible for the negligent credentialing of Dr. Kindt by allowing him to perform procedures.

## FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiff filed his original Complaint on August 24, 2012. [Doc. 1].

2. Plaintiff moved to amend the Complaint to add a negligent privileging and credentialing claim on June 17, 2013 after Dr. Kindt demonstrated cognitive difficulties at his deposition. [Doc. 25].

3. Defendant USA responded to the Motion to Amend on July 10, 2013. [Doc. 26]. In the Response, Defendant USA argued that the Motion to Amend should be denied because the additional claim was futile given Plaintiff's failure to exhaust administrative remedies.

4. On July 11, 2013, the Court granted Plaintiff's Motion to Amend the Complaint. [Doc. 27]. Plaintiff's First Amended Complaint [Doc. 28] was accepted for filing on that same date.

5. Defendant USA responded to Plaintiff's First Amended Complaint in its Answer on July 19, 2013. [Doc. 29]. Defendant USA admitted that Plaintiff had satisfied the jurisdictional requirements of 28 U.S.C. § 2675 by timely filing an administrative claim. *See* ¶ 2 of First Amended Complaint and Answer to First Amended Complaint. Defendant USA did not raise any jurisdictional defense nor did it assert any defense based on immunity.

6. The Final PreTrial Order was submitted on August 21, 2014 and approved by the Court on August 28, 2014. [Doc. 42]. For the first time, Defendant USA asserted, as a defense, that sovereign immunity was not waived because the VA Hospital's privileging and credentialing decisions were a discretionary function. *See* p. 4-5 of Final PreTrial Order.

7. The case was tried to the Court for a week beginning December 15, 2014. A substantial portion of the witnesses and exhibits at trial involved testimony and evidence related to Plaintiff's negligent credentialing and privileging claim.

8. The Court heard closing arguments on January 12, 2015. During Defendant USA's closing argument, counsel requested the Court should disregard the negligent credentialing and privileging claim because of a potential immunity defense under the Colorado Professional Review Act ("CPRA"). The Court requested briefing on the newly raised issue. Notably, although the discretionary function defense had been raised in the Final PreTrial Order, Defendant USA did not make arguments in support of that defense to the Court at the time of closing arguments.[1]

9. Defendant USA filed its Trial Brief Concerning Plaintiff's Negligent Credentialing Claim on January 27, 2015. [Doc. 73]. In its brief, Defendant USA provides misstatements of the law and omits significant unrebutted expert testimony.

---

[1] The USA seemingly abandoned the discretionary function defense following its inclusion in the Final PreTrial Order. It is likely that such defense was abandoned because of clearly established case law indicating such a defense would not be relevant under the facts of this case, i.e. that the privileging and credentialing decisions were governed by written VA policies, procedures and handbooks. *Berkovitz v. United States,* 486 U.S. 531, 536–37, (1988); *Brandt v. U.S. Dep't of Veterans Affairs*, 99-197-B, 2000 WL 1879806 (D. Me. Dec. 22, 2000). Additionally, Plaintiff's credentialing expert, Dr. John Shershow, testified that the privileging and credentialing at the VA was not discretionary, but included absolute requirements as defined by the VHA handbook. *See Tr., December 15, 2014,* at 45:3-9, attached as **Exhibit 1**. This testimony was not disputed by Defendant USA at trial.

**ARGUMENT**

I. **There is Subject-Matter Jurisdiction over Plaintiff's Negligent Credentialing and Privileging Claim**

   a. **Defendant Misconstrued the "Private Individual" Provision of the FTCA.**

The legislature promulgated the FTCA after "nearly thirty years of congressional consideration." *Dalehite* v. *United States*, 346 U.S. 15, 24 (1953). "As the Federal Government expanded its activities, its agents caused a multiplying number of remediless wrongs—wrongs which would have been actionable if inflicted by an individual or a **corporation** but remediless solely because their perpetrator was an officer or employee of the Government." *Feres* v. *United States*, 340 U.S. 135, 139-140 (1950). The FTCA permits claims that "under circumstances where the United States, if a private person, would be liable to claimant…." 28 U.S.C. § 1346(b)(1). The FTCA further states the United States is liable under state tort law "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

These FTCA provisions, given their plain and natural meaning, make the United States liable for negligence if state law "would impose liability on private persons or **corporations** under similar circumstances." *Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957)(emphasis added); *see also Hill v. United States,* 81 F.3d 118, 121 (10th Cir. 1996)("[T]he government, as **tortfeasor**, was treated in a precisely analogous fashion to a similarly-situated private **tortfeasor**.")(emphases added). Beyond this, federal district courts recognize claims against the USA on the behalf of a VA Hospital's negligence in credentialing physicians. *See, e.g., Brandt v. U.S. Dep't of Veterans Affairs*, No. 99-197-B, 2000 WL 1879806 (D. Me. Dec. 22, 2000)(applying Maine law).

Plaintiff agrees that the FTCA "mandates application of Colorado state law to resolve questions of substantive liability." *Gallardo v. United States*, 752 F.3d 865, 870 (10th Cir. 2014). However, the cases discussed by Defendant USA concerning corporate liability under the FTCA are greatly distinguishable from the facts of this case under Colorado law. *See* Defendant's Trial Brief Concerning Plaintiff's Negligent Credentialing Claim, p. 2-3. For example, *United States v. Olson*, 546 U.S. 43 (2005), involved the unique question of whether the "private person" provision of the FTCA creates waiver of immunity where local law makes a state or municipal entity liable. This has no bearing here, where the Court must consider whether a private entity, a hospital, is liable for negligent credentialing and privileging under Colorado law.

The remaining cases cited by Defendant USA on this issue all differ from the present case, as the substantive state law did not permit liability in each instance. *Meier v. United States*, 310 F.App'x 976, 979 (9th Cir. 2009)(no liability under California law for negligent peer review by hospital); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281 (5th Cir. 2012)(no liability under Mississippi or Alabama law when private person voluntarily allows his property to be used as an emergency shelter); *Maradiaga v. United States*, 679 F.3d 1286 (11th Cir. 2012)(no liability under Florida statutory law for birth-related neurological injuries caused by healthcare provider's negligence); *Barnes v. United States*, 448 F.3d 1065 (8th Cir. 2006)(no liability under Missouri law for tort since "good Samaritan" rule did not apply to the case). The FTCA claims in the preceding cases failed because there was no avenue of liability under state law, not because the plaintiffs brought claims against entities rather than individuals.

To the contrary, Colorado law clearly creates liability for hospitals that are negligent in credentialing and privileging physicians. *See infra*, p. 6-8. When discussing the very provisions of the FTCA containing the term "private individual," the United States Supreme Court refers to private corporations and entities. *Rayonier,* 352 U.S. at 318. Defendant USA is arguing that the term "private individual" omits any potential corporate or organizational liability. This is incorrect. Here, administrative negligence on behalf of the employees is imputed onto the hospital. Hospitals do not have brains—they have people. Even systematic failures inherently derive from the actions of the individuals that implement the systems. Therefore, the VA Hospital is liable for the negligent credentialing and privileging of Dr. Kindt in the same manner and to the same extent as a private Colorado hospital would be under these circumstances.

### b. Colorado Law Recognizes a Claim and Remedy for Negligent Credentialing and Privileging by a Hospital and Provides No Immunity to Hospitals.

Colorado was one of the first states to recognize a duty on the part of hospitals to properly credential and privilege physicians. *Kitto v. Gilbert* 39 Colo. App. 374, 570 P.2d 544 (1977); *see also Austin vs. Litvak*, 682 P.2d 41, 54 (Colo. 1984)(recognizing negligent credentialing as a cause of action). More recently, the Colorado Court of Appeals addressed the interplay between the CPRA, Colo. Rev. Stat. § 12-36.5-203, and the common law principle that a hospital can be liable for negligently extending privileges to a physician. *Kauntz v. HCA-Healthone, LLC,* 174 P. 3d 813, 817 (Colo. App. 2007).

At that time, the CPRA granted immunity from damages, if the peer review committee meets the standards of the Healthcare Quality Improvement Act ("HCQIA"), to the following parties:

> (a) An authorized entity, professional review committee, or governing board;
> (b) Any person acting as a member of or staff to the authorized entity, professional review committee, or governing board;
> (c) A witness, consultant, or other person who provided information to the authorized entity, professional review committee, or governing board; and
> (d) Any person who participates with or assists the professional review committee or governing board with respect to the professional review activities.

Colo. Rev. Stat. § 12-36.5-203(1).

In interpreting this statutory provision, the *Kauntz* Court held the CPRA did not "preclude negligent credentialing claims which may assert that the particular hospital failed to have a qualifying peer review process in place, those which assert that the hospital failed to utilize peer review in responding to a physician's request for credentials, or other potential claims for which immunity may not be involved." *Id.* at 819. Participants in peer review must act in accordance with the HCQIA to receive immunity, which states a professional review action must be taken:

> (1) in the reasonable belief that the action was in furtherance of quality health care,
> (2) after a reasonable effort to obtain the facts of the matter,
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

*North Colorado Medical Center, Inc. v. Nicholas,* 27 P.3d 828, 845 (Colo. 2001)(quoting HCQIA, 42 U.S.C. § 11112(a)). Simply stated, no immunity exists for a party that fails to conform to these federally-mandated factors.

After *Kauntz,* the legislature amended the CPRA to clarify the abrogation of hospital immunity for negligent privileging and credentialing:

> (2) (a) Notwithstanding subsection (1) of this section, nothing in this article relieves an authorized entity that is a health care facility licensed or certified pursuant to part 1 of article 3 of title 25, C.R.S., or certified pursuant to section 25-1.5-103, C.R.S., of liability to an injured person or wrongful death claimant for the facility's independent negligence in the credentialing or privileging process for a person licensed under article 36 of this title or licensed under article 38 of this title and granted authority as an advanced practice nurse who provided health care services for the injured or deceased person at the facility. For purposes of this section, the facility's participation in the credentialing process or the privileging process does not constitute the corporate practice of medicine.

Colo. Rev. Stat. § 12-36.5-203(2)(effective July 1, 2012). This statutory amendment is applicable retroactively. *Hickman v. Catholic Health Initiatives,* 328 P. 3d 266 (Colo. App. 2013)(holding retroactive application of statutory amendment is constitutional since "[a]brogating the hospital's immunity from damages did not create a new duty or obligation because, under the former statute, the hospital had a duty of care in credentialing medical professionals").

Plaintiff filed his original Complaint on August 23, 2012. This occurred after the effective date of Colo. Rev. Stat. § 12-36.5-203(2), which explicitly states that nothing in the CPRA relieves a health facility from liability in the credentialing and privileging process. Defendant USA argues that the Court lacks subject-matter jurisdiction over the Plaintiff's negligent credentialing claim because individuals have been given immunity under this statute. *See* Defendant's Trial Brief, p. 4. This position does not address the fact that Plaintiff's negligent credentialing claim applies to the VA Hospital, an entity which has no immunity under the CRPA. Accordingly, Plaintiff's negligent credentialing claim is valid as Colorado law offers no immunity to hospitals faced with such claims.

## II. Plaintiff Established a Substantial Factual Basis to Support His Credentialing and Privileging Claim.

During the trial of this matter, there were several witnesses presented and exhibits introduced relating to the negligent privileging and credentialing claim. Plaintiff called a privileging and credentialing expert, John Shershow, M.D. and submitted portions of Dr. Kindt's deposition testimony. Defendant USA called Eric Maestas (Medical Staff and Credentialing Coordinator), Thomas Whitehill, M.D. (Surgery Service Chief), Kerry Brega, M.D. (Neurosurgery Peer) and submitted portions of Dr. Kindt's deposition testimony. Additionally, Defendant USA brought in evidence of Dr. Kindt's physical and cognitive function at the time of Mr. Lopez's surgery through Samuel Waller, M.D. Notably, three of the five total witnesses called by the USA were primarily called for testimony related to the negligent privileging and credentialing claim.

### A. Since the USA failed to take peer review action as required by the HCQIA, there is no immunity under the CPRA.

Defendant USA, standing in the place of the VA Hospital, must take professional review action:

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
> (2) after a reasonable effort to obtain the facts of the matter,
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C.A. § 11112(a), *supra*.

Here, the VA Hospital did not conform to these standards in the credentialing and privileging process of Dr. Kindt, thus preventing the CRPA from offering any immunity to

9

Defendant USA. There was an abundance of trial testimony concerning the USA's failure to make reasonable efforts to obtain the facts of the matter:

- Mr. Maestas testified that the minutes of the Professional Review Board state they had quality assurance data indicating Dr. Kindt had unsatisfactory performance resulting in limited operative privileges. *Tr., December 17, 2014,* at 577:23-578:7, attached as Exhibit 1.

- Mr. Maestas testified that quality assurance data indicating unsatisfactory performance indicates to him that someone involved in privileging and credentialing limited those privileges. *Tr., December 17, 2014,* at 578:20-25, attached as Exhibit 1.

- Mr. Maestas testified that peer reference form signed by Dr. Brega and Whitehill should have been answered in the affirmative regarding the question about whether an action was taken regarding Dr. Kindt's privileges. *Tr., December 17, 2014,* at 579:19-580:5, attached as Exhibit 1.

- Dr. Whitehill testified that the two RCAs referenced in the 2009 Service Chief Assessment were not considered as part of Dr. Kindt's re-credentialing and re-privileging in 2009. *Tr., December 19, 2014,* at 706:16-19, attached as Exhibit 1.[2]

- Dr. Whitehill testified that he did not use provider specific aggregate data (as required by the standard of care) because the VA did not give it to him. *Tr., December 19, 2014,* at 734:23-735:8, attached as Exhibit 1.

---

[2] Despite this admission at trial, Defendant USA in its trial brief, asserted the exact opposition contention. *See* Defendant USA's Trial Brief at p. 6-7.

- Dr. Whitehill also indicated that he had no recollection of doing anything about the hit on the National Practitioner Database for Dr. Kindt in 2009. *Tr., December 19, 2014,* at 770:21-771:1, attached as Exhibit 1.

- Dr. Whitehill also testified that Dr. Kindt voluntarily gave up cranial surgeries because of his inability to use the BrainLab at the end of 2009[3], and subsequently testified that he and Dr. Brega stepped Dr. Kindt back from cranial surgery in 2009. *Tr., December 19, 2014,* at 719:7-720:1 and 729:5-18, attached as Exhibit 1.

- Dr. Whitehill testified that a number of people at the VA were concerned about Dr. Kindt's age and ability to perform. *Tr., December 19, 2014,* at 729:25-730:4, attached as Exhibit 1.

- Dr. Whitehill testified there were safeguards established by the Professional Standard Board in 2009, which involved a supervisory plan that every procedure scheduled for Dr. Kindt would be reviewed by Dr. Brega to make sure the scheduling was correct and they were cases he would do well. *Tr., December 18, 2014,* at 756:8-19, attached as Exhibit 1.

- Dr. Brega testified she did nothing to verify if any action had been taken regarding Dr. Kindt's clinical privileges with regard to her peer review approval of Dr. Kindt. *Tr., December 18, 2014,* at 686:22-687:3, attached as Exhibit 1.

- Dr. Brega did not know Dr. Kindt's operative privileges had been limited because of quality data indicating unsatisfactory performance and would have answered the peer

---

[3] BrainLab is a technology used for locating lesions on the brain. It is not used in all cranial surgeries. Dr. Brega testified BrainLab was in use since 2004. *Tr., December 18, 2014,* at 681:10-12, attached as **Exhibit 1**.

review form differently, had she known. *Tr., December 18, 2014,* at 687:15-20, attached as Exhibit 1.

- Dr. Brega testified that as of December 2009, the decision was made that Dr. Kindt would stop operating in June of 2010. *Tr., December 18, 2014,* at 693:2-4, attached as Exhibit 1.

Despite the overwhelming evidence at or near the time of the recredentialing in December of 2009, the USA did not fully investigate Dr. Kindt's ability to safely perform surgery. This failure to conform with the HCQIA eliminates peer review immunity for negligent privileging and credentialing pursuant to Colorado statutory law.

**B. There was sufficient evidence to prove the elements of negligent credentialing and privileging of Dr. Kindt in 2009 by Defendant USA.**

Hospitals have a duty to supervise the competence of their medical staff. *Braden v. Saint Francis Hosp.,* 714 P.2d 505, 507 (Colo. App. 1985); *see Camacho v. Mennonite Bd. of Missions*, 703 P.2d 598, 600 (Colo. App. 1985)(a hospital may be liable for negligently supervising and reviewing the performance of the members of its medical staff). "In extending staff privileges to a doctor, a hospital does not generally expose itself to liability for the doctor's negligence unless it knows or should know of a propensity on the doctor's part to commit negligent acts." *Braden,* 714 P.2d at 507 (quoting *Western Insurance Co. v. Brochner,* 682 P.2d 1213, 1215 (Colo. App. 1983), *rev'd*, 724 P.2d 1293 (Colo. 1986)).

To recover damages for negligent credentialing, a plaintiff must prove that

> (1) the hospital had a legal duty to conform to a certain standard of conduct;
> (2) the hospital breached that duty;
> (3) the plaintiff was injured; and
> (4) there was a causal connection between the hospital's alleged negligent conduct and the resulting injury.

12

*Settle v. Basinger,* No. 13SC178, 2013 WL 6804561 (Colo. App. Dec. 23, 2013); *see also Camacho*, 703 P.2d at 599-600.

Defendant USA attempts to inject an additional burden on the plaintiff which is unsupported by Colorado law: knowledge of propensity on the doctor's part to commit negligent acts. *See* Defendant's Trial Brief, p. 5. Defendant USA cites two cases to support this position. Defendant USA fails to mention that in the first case, *Braden v. Saint Francis Hosp.*, 714 P.2d 505 (Colo. App. 1985), the Plaintiffs conceded that knowledge of a doctor's propensity to commit negligent acts was a requirement to bring forth the negligent credentialing claim. The second case, *Camacho*, makes no mention of any knowledge requirement as to propensity. 703 P.2d 598 (holding "there was virtually no evidence presented to show that the defendant hospital's review procedures were inadequate). Plaintiff Mr. Lopez rejects any legal requirement to prove this additional factor exits, although there was evidence of Dr. Kindt's unsuccessful past surgeries.

The only expert called at trial to testify regarding the negligent privileging and credentialing claim was Dr. John Shershow. The Defendant USA did not offer any evidence to rebut the expert opinions of Dr. Shershow. Dr. Shershow testified that the VA's privileging and credentialing of Dr. Kindt in 2009 was negligent:

- Dr. Kindt's credentialing file had no iterations of peer reviews, no aggregate data or any performance monitoring. *Tr., December 15, 2014,* at 52:1-6, attached as Exhibit 1.

- Standard of care in 2009 was to have aggregate data and to use it in looking at physician specific performance. *Tr., December 15, 2014,* at 59:8-19, attached as Exhibit 1.

13

- Dr. Kindt's relinquishment of privileges to do cranial surgeries in 2009 should have been treated as a red flag. *Tr., December 15, 2014,* at 60:22-61:14, attached as Exhibit 1.

- The peer references for Dr. Kindt should have reflected that there had been action against Dr. Kindt's privileges. *Tr., December 15, 2014,* at 68:2-15, attached as Exhibit 1.

- The privileging and credentialing activities for Dr. Kindt in 2009 did not meet the standard of care. *Tr., December 15, 2014,* at 58:11-14, attached as Exhibit 1.

Plaintiff also established causation with regard to the negligent privileging and credentialing claim. Had Dr. Kindt not been privileged and credentialed by the VA in 2009, he would not have been present for Mr. Lopez's surgery on March 5, 2010. Because Dr. Kindt was present for Mr. Lopez's surgery on March 5, 2010, he caused harm to Mr. Lopez (if he removed the nerve root) or failed to prevent harm by Dr. Waller (by properly supervising the surgery done by Dr. Waller). In either case, but for Dr. Kindt's presence, Mr. Lopez's nerve root was removed resulting in CRPS. Testimony relevant to such information is provided below:

- The VHA Handbook indicates that "Credentialing and privileging must be completed prior to initial appointment or reappointment to the medical staff…*See Tr. Exhibit 46, p. 1, paragraph d.,* attached as Exhibit 2.

- Dr. Shershow testified that the industry standards would not have allowed Dr. Kindt to be operating unless he'd been adequately investigated as part of the credentialing process. *Tr., December 15, 2014,* at 60:1-17, attached as Exhibit 1.

14

- Dr. Poffenbarger testified that whether it was Dr. Waller or Dr. Kindt who removed the nerve, it was a breach of the standard of care. *Tr., December 16, 2014,* at 286:20-287:3, attached as Exhibit 1.

- Dr. Kindt testified in his deposition that the resident performs the surgery with the attending telling him what to do or at least closely monitoring what's done. *Deposition of Dr. Kindt, 104:7-17,* attached as Exhibit 3.

    C.    **The "Captain of the Ship" Doctrine Does Not Relieve the Government of Liability for the Negligence of Dr. Waller.**

Defendant USA contends that Dr. Kindt was the "Captain of the Ship" and even if Dr. Waller removed the nerve root, Dr. Kindt is responsible. This argument is without merit given that the only reason Dr. Kindt was present in the operating room was due to a negligent privileging and credentialing review in 2009. Even if the Court assumes *arguendo* that this premise is true, Defendant USA is and should still be held responsible.

Application of the "captain of the ship" doctrine does not let the Government off the hook. As the Tenth Circuit noted in footnote 17 of its opinion in *Bethel v. United States*, 456 Fed. App'x 771, 781 (10th Cir. 2012) (not selected for publication),

> . . . the "captain of the ship" doctrine is based on respondeat superior principles. . . . "The doctrine of respondeat superior provides that an employer may be held vicariously liable for an employee's torts when the act is committed within the course and scope of employment." *Colo. Comp. Ins. Auth. v. Jones*, 131 P.3d 1074, 1079-80 (Colo. App. 2005). "The additional liability of the employer, however, does not shield the negligent employee from his own personal liability, nor does it supplant his liability with that of his employer. It provides only an alternative, and in some cases a more lucrative, source from which the injured party may recover his damages." *Shannon v. City of Milwaukee*, 289 N.W.2d 564, 568 (Wis. 1980); *see also Arnold ex rel. Valle v. Colo. State Hosp., Dept. of Insts.*, 910 P.2d 104, 107 (Colo. App. 1995) ("An employer's liability for an employee's negligence based upon *respondeat superior* is only a secondary liability.").

15

Therefore, the fact Dr. Kindt may be responsible for Dr. Waller's negligence under the "captain of the ship" doctrine does not relieve Dr. Waller from his own negligence.[4]

This point is fortified by provisions of the FTCA and Colorado's doctrine of respondeat superior. Under the FTCA, the United States government is liable for tortious acts committed by employees "acting within the scope of [their] office or employment." 28 U.S.C. § 1346(b)(1). "Scope of employment" is determined by the law of the place where the accident occurred. *Franklin v. United States*, 992 F.2d 1492, 1495 (10th Cir. 1993); *see also* 28 U.S.C. § 1346(b)(1). Under Colorado law, "the doctrine of respondeat superior is based on the theory that the employee acts on behalf of the employer when the employee is within the scope of his or her employment." *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1019 (Colo. 2006); *see also Colo. Comp. Ins. Auth. v. Jones*, 131 P.3d 1074, 1079-80 (Colo. App. 2005) ("The doctrine of respondeat superior provides that an employer may be held vicariously liable for an employee's torts when the act is committed within the course and scope of employment."). In general, "the question of

---

[4] In the analogous context of an agent of a vicariously liable corporation, "[c]orporate agents are liable for torts of the corporation if they approved of, sanctioned, directed, actively participated in, or cooperated in such conduct." *Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.,* 251 P.3d 9, 28 (Colo. App. 2010). Such an agent may "be held personally liable for his or her individual acts . . . even though committed on behalf of the corporation, which is also held liable." *Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. App. 2003). "At a minimum, personal liability attaches to a defendant who was directly involved in the conduct through conception or authorization." *Id.* at 868. "Other direct involvement, such as active participation or cooperation, specific direction, or sanction of the conduct, also may be sufficient." *Id.; Hildebrand v. New Vista Homes II*, LLC, 252 P.3d 1159, 1166 (Colo. App. 2010). "An agent may be held personally liable for torts committed by him . . . even though the tortious acts were done on behalf of his principal. *Galie v. RAM Associates Management Services, Inc.*, 757 P.2d 176, 177 (Colo. App. 1988) (finding that corporate officers "may be held accountable for their own misfeasance"). As Judge Finesilver held, "[u]nder Colorado law, an agent of a corporation may be held personally liable in tort for acts committed by him, even though the actions were committed on behalf of the corporation." *Vaske v. DuCharme, McMillen & Assoc., Inc.*, 757 F.Supp. 1158, 1166 (D.Colo. 1990). "An individual is responsible for the torts which she commits regardless of whether or not the tort is committed in the course of her duties as officer or employee of a corporate entity." *Doig v. McHugh (In re McHugh),* 2003 Bankr. LEXIS 545 (Bankr. D. Colo. June 2, 2003).

whether an employee is acting within the scope of the employment is a question of fact . . . ." *Raleigh*, 130 P.3d at 1019. Here, the Government has admitted Dr. Waller was acting within the scope of his employment at the time of Mr. Lopez's injury. *See* Answer to Plaintiff's Complaint by the United States of America [Doc. 12] at ¶12 and Notice of Substitution [Doc. 11] at ¶¶2,4 ("Dr. Waller was at all times relevant hereto, a non-compensated employee of the Department of Veterans Affairs in Denver, Colorado"; ". . . "Dr. Waller was acting within the course and scope of his employment at all times relevant to this action."). Therefore, under the FTCA, the Government has assumed responsibility for his negligence. *See* 28 U.S.C. § 2679(d)(1).

## CONCLUSION

Colorado law does not provide immunity to health care facilities for negligent credentialing and privilege. Instead, Colorado statute explicitly provides that hospitals do not have immunity under the CPRA. Further, Plaintiff provided the Court with sufficient evidence to prove all elements of the negligent credentialing claim.

Respectfully submitted this 3rd day of February, 2015.

LEVENTHAL & PUGA, P.C.

*s/DezaRae LaCrue*
Jim Leventhal
DezaRae LaCrue
LEVENTHAL & PUGA, P.C.
950 S. Cherry Street, Suite 600
Denver, CO 80246
Telephone: (303) 759-9945
Facsimile: (303) 759-9692

Natalie Brown
FRANKLIN D. AZAR & ASSOC., P.C.

14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Facsimile: (303) 757-3206
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 3rd day of February, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

  Mark S. Pestal, Esq.       mark.pestal@usdoj.gov

                 *s/ DezaRae LaCrue*